UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
VICTOR M. SERBY,

                    Plaintiff,         **MEMORANDUM & ORDER**

      - against -                   On Motion to Dismiss
                                           04 Civ. 901 (DRH) (MLO)

THE TOWN OF HEMPSTEAD,
THE INCORPORATED VILLAGE OF HEWLETT NECK,
THE COUNTY OF NASSAU,
THE POLICE DEPARTMENT OF NASSAU COUNTY,
DENISE AYRE, DENISE WILLIX,
SERGEANT FRANK SABELLA,
P.O. JOHN LUTZ, ANIMAL CONTROL
OFFICER GARY SHAW, ANIMAL CONTROL
OFFICER KOMINSKI (a/k/a BART COMINSKY),
JACK OLSON, JOHN DOE, and
MARIO BOVE,

                    Defendants.
----------------------------------X

**APPEARANCES:**

For the Plaintiff:
**LAW OFFICES of JONATHAN SPENCER HORN**
125-10 Queens Blvd., Ste. 220
Kew Gardens, NY 11415
     **By:** Jonathan S. Horn, Esq.


For Defendants: The County of Nassau,
       The Police Department of Nassau County,
       Sergeant Frank Sabella, and
       P.O. John Lutz:
**NASSAU COUNTY ATTORNEY'S OFFICE**
One West Street
Mineola, NY 11501
     **By:** Liora M. Ben-Sorek, Esq.

**HURLEY, Senior District Judge:**

The instant case springs from a municipality's attempted enforcement of N.Y. Agricultural and Markets Law § 121, the State's so-called "dangerous dog statute" ("dangerous dog statute") and related civil proceedings initiated by the municipality. In short, pursuant to the dangerous dog statute, certain municipal employees sought to temporarily seize Plaintiff's dog, "Wingo". The dog was never taken from the Plaintiff, but, as a result of the municipality's attempt to do so, together with its related civil proceedings, Plaintiff brought suit against the municipality and others in this Court alleging violations of his civil rights and of common law, and demanding punitive and treble damages.

Plaintiff is Victor M. Serby ("Plaintiff" or "Serby") who brings the present suit against Defendants The Town of Hempstead ("Town"); The Incorporated Village of Hewlett Neck ("Village"); The County of Nassau ("County"); The Police Department of Nassau County ("Police Department"); Denise Ayre ("Ayre"); Denise Willix ("Willix"); Sergeant Frank Sabella ("Sabella"); P.O. John Lutz ("Lutz"); Animal Control Officer Gary Shaw ("Shaw"); Animal Control Officer Kominski ("Kominski"); Jack Olson ("Olson"); John Doe ("Doe"); and Mario Bove ("Bove")[1] for (1) violations of his Fourth Amendment right against unlawful seizure and right to travel ("First Cause of Action"); (2) trespass ("Second Cause of Action"); (3) violations of his Fifth Amendment civil rights depriving him of his property right to his dog and intentional infliction of emotional distress ("Third Cause of Action"); (4) false imprisonment ("Fourth Cause of Action"); (5) malicious prosecution and abuse of process ("Fifth Cause of Action"); and (6)

---

[1] At times, for convenience, the Court may refer to the Defendants collectively as "Defendants."

mail fraud and wire fraud, violating 18 U.S.C. § 1964, resulting from the Village's tardy execution of its animal control contract with the Town ("Sixth Cause of Action"). (*See* Pl.'s Second Amend. Compl. ("Complaint")). In addition to punitive damages and treble damages, Serby seeks declaratory judgment that the "dangerous dog statute" is unconstitutional ("Seventh Cause of Action") and seeks an injunction prohibiting the Defendants from seizing Plaintiff's dog ("Eight Cause of Action").

County Defendants[2] moves to dismiss Plaintiff's entire Complaint.[3] (*See* County Def.'s Mem. of Law in Support of Mot. Dismiss ("County Dismissal Mem.").) In support of its dismissal motion pursuant to Federal Rule of Civil Procedure 12(b)(6), County Defendants make three arguments. First, Serby fails to state a cause of action against the County Defendants. Second, Serby does not state a claim under the *Monell*[4] doctrine, *i.e.*, in his Complaint, Serby fails to sufficiently allege any municipal custom or policy that caused the deprivation of his rights

---

[2] Note that the Court uses "County Defendants" to collectively refer to the County of Nassau, the Police Department of Nassau County, Sergeant Frank Sabella, and P.O. John Lutz.

[3] According to a footnote in the County's Memorandum of Law in Support of County Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint:

> It should be noted that while the Second Amended Complaint alleges eight causes of action, only the first four causes of action, stated supra, are addressed to or applicable to the County Defendants. The County's only involvement with plaintiff was as a result of the Police responding to a call to assist the Town of Hempstead Animal Control Officers in their attempt to seize plaintiffs' [*sic*] dog pursuant to an Order to seize dog, on March 3, 2003. The Second Amended Complaint does not allege that the County was involved in the civil proceeding against plaintiff under the "dangerous dog statute"; nor does it allege that the County was involved whatsoever in the contract between the Town of Hempstead Animal Control and the Village of Hewlett Neck (Complaint ¶¶ 46-70). Accordingly, *this motion will address only the first four causes of action*.

County Dismissal Mem. at 2 n.1 (emphasis added).

The Plaintiff raises no objection to this characterization; indeed, he does not address it. Thus, the Court will treat Plaintiff's silence as his acquiescence to the County's interpretation that only Plaintiff's first four causes of action in his Complaint pertain to County Defendants. To ensure the creation of a clear record, the Court now states that, to the extent raised against County Defendants, Plaintiff is deemed to have waived his fifth through eight causes of action as against the County Defendants only.

[4] *See Monell v. N.Y. City Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

of which he complains.  Third, as County employees, Sergeant Sabella and P.O. Lutz are entitled to qualified immunity.  (Relatedly, the County argues that the Police Department "is a non-sue able entity and lacks the capacity to be sued." (*Id.* at 2 (citing *Yonkers Comm'n. on Human Rights v. Yonkers*, 654 F. Supp. 544, 551 (S.D.N.Y. 1987).)

A liberal reading of Serby's Complaint demonstrates that the Plaintiff has failed to state a claim upon relief can be granted; therefore, the Court GRANTS County Defendants' Motion to Dismiss Plaintiff's first four causes of action as it relates to them.

**I.    BACKGROUND**

On a motion for dismissal, a court must accept as true all facts alleged in a plaintiff's complaint and must draw all inferences in favor of the plaintiff.  *See Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 106 (2d Cir. 2005) (citing *Todd v. Exxon Corp.*, 275 F.3d 191, 197 (2d Cir. 2001)).  Thus, this summary of facts is based on the Plaintiff's Second Amended Complaint (the "Complaint").

In late January 2003, Defendant Denise Ayre[5] filed a "Dangerous Dog Complaint" against Plaintiff's dog.  It is unclear from Serby's Complaint what events prompted Ayre to make this complaint.  However, after speaking with Ayre, Defendant Denise Willix, an Animal Control Officer, submitted the Dangerous Dog Complaint ("dog complaint') in which she stated she had "reason to believe that the aforesaid dog [*i.e.*, Wingo] owned by the above named dog owner

---

[5] Defendant Ayre did not made an appearance in this action.  Thus, Plaintiff moved for default judgment against Ayre; hearing no response from Ayre, the Clerk of Court noted Ayre's default on September 21, 2004.  Default judgment against Ayre was subsequently granted on September 24, 2004.

[*i.e.*, Serby] is a dangerous dog and asks that said dog be dealt with as provided in Section 121 of the Agricultural and Markets Law of the State of New York." (Complaint ¶56.) Upon submitting the dog complaint, Willix had never seen Wingo nor did she know whether the dog had ever bitten or attacked anyone. As a result of statements made by Ayre and Willix in the dog complaint, an order directing the seizure of Wingo, pursuant to § 121 of N.Y. Agricultural and Markets Law, was executed.

Plaintiff Serby lives in the Village of Hewlett Neck, in Nassau County, with his dog, Wingo. On March 3, 2003, Serby was in his locked house together with Wingo. At around 10 a.m., Town of Hempstead Animal Control Officers, together with Nassau County P.O. Lutz, arrived at Serby's house to seize Wingo pursuant to an "Order to Seize Dog" ("Order"). The officers knocked on Serby's inner door and, through the window of the door, showed Serby the Order. After examining the Order, Serby informed the officers that it was defective and, therefore, refused to turn over Wingo. Serby also refused the officers' request to allow them in the house, informing them that they did not have a warrant to do so. He told the officers to leave his property immediately, but they disregarded this instruction. Instead, they called for backup resulting in the arrival of Animal Control vehicles and police cars.

Upon the arrival of backup, the officers again attempted to seize Wingo; they again knocked on Serby's door and threatened to enter the house to take the dog. At that time, P.O. Lutz informed Serby that he was subject to arrest for obstruction of justice. He also placed his hand on his sidearm. Other defendants appeared on the scene and joined in the efforts to seize Wingo. Serby told the officers to leave his property, but they did not immediately do so.

Serby contends that, "Upon information and belief, TOWN [of Hempstead] was using NY Agricultural and Markets Law § 121, the 'dangerous dog statute,' to enforce mere alleged leash law violations." (*Id.* ¶ 64.) He also asserts that at the time of the attempted seizure of Wingo, there was no animal control contract in place between the Village and the Town; therefore, the Animal Control Officers had no jurisdiction to act in March 2003. It was not until April 7, 2003, that the Village "adopted the Town of Hempstead dog/cat seizure agreement for the period commencing January 1, 2003 through December 21, 2005." (*Id.* ¶ 69.)

## II.  STANDARD ON MOTION TO DISMISS

As already noted, when presented with a motion to dismiss, a court must accept as true all facts alleged by the plaintiff in his complaint. *Twombly*, 425 F.3d at 106. Likewise, the court must draw all inferences in favor of the plaintiff. *Id.; see also Dangler v. N.Y. City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999) ("In ruling on [a motion for dismissal], the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the compliant to assume all well-pleaded factual allegations to be true, and to view all reasonable inferences that can be drawn from such allegations and documents in the light most favorable to the plaintiff.") (internal citations omitted). "A complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Todd v. Exxon*, 275 F.3d at 197) (further citation omitted). "At the pleading stage . . . the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*

*of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (citation, brackets, and internal quotation marks omitted)) (ellipses in *Twombly*).

**III.   DISCUSSION**

By way of format, the Court will first address the County's argument that the Police Department is not a proper party. The Court will then address the County Defendants' argument that Serby fails to state a § 1983 claim together with its argument that Serby does not state a claim under *Monell*, as those arguments conflate. Finally, the Court will turn to the County's argument that employees Sabella and Lutz are entitled to qualified immunity.

   *A.     The Police Department as a Party*

As a preliminary matter, the Court addresses the County Defendants' argument that Plaintiff's Complaint should be dismissed against the Police Department. The County contends that "the Nassau County Police Department is a department and an 'arm' of Nassau County, and thus is a non-sue able entity." (County Dismissal Mem. at 2 (citing Nassau County Charter, Ch. VII).) County Defendant argues that the Nassau County Charter did not confer upon the Police Department the powers and duties to sue or be sued in its own name. (*Id.* (citing Nassau County Charter § 802).)

Plaintiff's only counter-argument is that since the County was also named as a defendant, the correct entity has been sued. (Pl.'s Opp'n Mem. at 7.) Moreover, Plaintiff argues that the County, Lutz and Sabella "were all on notice of what Plaintiff is claiming." (*Id.*) That is true. Thus, since Plaintiff concedes he has named the proper entity to raise his claims against the Police Department, *i.e.*, the County, and since there is no authority under which to directly sue

the Police Department, *see* Nassau County Charter, Ch. VII, and § 802); *see also, e.g., Yonkers Comm'n of Human Rights v. Yonkers*, 654 F. Supp. 544, 551 9S.D.N.Y. 1987) ("As creatures of statute, arms or departments of the municipal government have only those powers which are expressly granted by statute and those powers which are necessary to implement the expresses powers."), the Plaintiff has failed to state a claim upon which relief can be granted as to the Police Department. *See* Fed. R. Civ. P. 12(b)(6). Therefore, Defendant Police Department is dismissed from this action as a matter of law.

    B.    *Plaintiff's § 1983 Claims Against the Remaining County Defendants*

In his Complaint, Plaintiff alleges that municipal employees, "acting under color of law, and pursuant to official policy" (*see* Complaint ¶72), violated his Constitutional rights under the Fourth Amendment by entering his house (*id.* ¶ 73) and under the Fifth Amendment by depriving him of "a property right in his dog" (*id.* ¶86). Though he never explicitly cites to 42 U.S.C. § 1983 in his Complaint, Plaintiff's claims are clearly § 1983 in nature. Thus, the Court will analyze Plaintiff's First and Third Causes of Action under the required § 1983 rubric. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

1. § 1983 Claims Against The County

> A municipality may be held liable as a "person" within the meaning of section 1983, *Monell v. N.Y. Dep't of Social Servs.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035, 56 L. Ed.2d 611 (1978), for violations of civil rights caused by the municipality's policy or custom, *id.* at 694, 98 S. Ct. at 2037. To recover against the municipality, it must be demonstrated that the official policy in question constitutes "the moving force of the constitutional violation," *id.* Therefore, to prevail against municipal defendants, first, a section 1983 plaintiff must "prove the existence of a municipal policy or custom" that caused his injuries and, second, "plaintiff must establish a causal connection . . . between the policy and the deprivation of his constitutional rights."

*Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir. 1987) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal footnote omitted; further citations omitted). Thus, in order to defeat the County Defendants' Motion to Dismiss as to his § 1983 claims, Plaintiff must show that the Complaint adequately alleges that the County had a policy or custom in place that caused his injuries and the presence of a causal connection between that policy and the deprivation of his Constitutional rights, here, his right (1) to be secure in his house, (2) to travel, and (3) to his property, *i.e.*, his dog.

(a) *The existence of a municipal custom or policy*

Upon a generous reading of the Plaintiff's Complaint, the Court surmises that the policy Plaintiff seeks to establish is that the *Town* used the dangerous dog statute as a means to enforce leash law violations. (*See* Complaint ¶ 63.) Notably, it is upon information and belief–not fact–that Plaintiff asserts the *Town* "intended" (but did not) use the dangerous dog statute "to extort a forced settlement [presumably in the form of a large fine] from Plaintiff by seizing his dog . . . knowing full well there was no dangerous dog." (*Id.* ¶ 64.) Plaintiff also alleges:

> 65. The TOWN after seizing a dog under the dangerous dog statute, pursuant to policy, denies a person charged under the statute due process by telling them that they will seek destruction of the dog if they do not agree to pay a hefty fine.
>
> 66. Most people capitulate to the TOWN's strong-arm tactics.

(Id. ¶¶ 65-66 (emphasis in original).)

The Court is unpersuaded that Plaintiff's Complaint adequately alleges the existence of a policy. Of paramount significance, the facts Plaintiff does allege to establish a policy pertain to the *Town*, not to the County Defendants. In any event, besides bald conjecture, the Complaint is void of any facts supporting Plaintiff's allegation of the Town's "policy."[6]

      (b)    *The causing of injuries*

Furthermore, accepting as true all of Serby's allegations stated in his Complaint and drawing all inferences in his favor, the Court is hard-pressed to find an injury which Serby has suffered. Rather, Serby's Complaint fails to allege sufficient facts to show any violation of his constitutional rights. First, nowhere in his factual recitation does Plaintiff state that any defendant entered his house.[7] (*See* Complaint, "Background" 3-5.) Thus, Plaintiff's assertion

---

[6] The Court notes alternative reasoning for finding Plaintiff failed to adequately allege the existence of a policy. First, the Plaintiff states his belief that the Town *intended* to implement its alleged policy against him; however, beside this speculative contention, there are no facts showing an attempted extortion by the Town. Without more, stating one's belief that another intends to do something is not enough to give rise to an inference in a plaintiff's favor. Second, there are no facts in the Complaint to substantiate Plaintiff's bald assertions that the Town denies a person due process and that most people capitulate to the Town's tactics.

[7] Plaintiff's attempt to have the Court consider the deposition testimony of Animal Control Officer Olson about another Officer entering Serby's house is unavailing. (See Pl.'s Opp'n Mem. 4.) On a motion to dismiss, "the court is to look only to the allegations of the complaint and any documents attached to or incorporated by reference in the compliant . . ." *Dangler*, 193 F.3d at 138. A review of the docket in this case confirms that there were no

that "Defendants, by entering Plaintiff's house, deprived Plaintiff of his rights under the Fourth Amendment . . ." (*Id.* ¶73), is no more than a bald assertion. Simple bald assertions and conclusions of law, though, do not prevent the dismissal of a complaint. *See* Fed. R. Civ. P. 12(b)(6); *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

Moreover, it is not enough that certain defendants were on Plaintiff's property or opened the screen door to knock on the inner door to Plaintiff's house. "[T]he Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). Plaintiff cannot claim a reasonable expectation of privacy on the walkway that leads to his door or the unlocked screen door before the inner door to his house. That area is "as open to the [] officers as to any delivery person, guest, or other member of the public." *United States v. Titemore*, 437 F.3d 251, 260 n.3 (2d Cir. 2006) (citing, among others, *United States v. Taylor*, 90 F.3d 903, 908-09 (4th Cir. 1996)) (instructing that common law property distinctions, such as curtilage, are no longer controlling in Fourth Amendment violation determinations; rather, it is 'a reasonable expectation of privacy' that controls the analysis). It was not unreasonable for the Animal Control Officers or P.O. Lutz to open the unlocked screen door to knock on Serby's inner door. While, perhaps, annoying, such action did not translate into a violation of Plaintiff's Fourth Amendment rights.[8]

---

attachments to Plaintiff's Complaint; nor are there any documents incorporated by reference in the Complaint. Therefore, here, the Court looks only to Plaintiff's Complaint.

[8] To the extent Serby's Fourth Amendment claim should be construed as one under the Fourteenth Amendment, for a due process violation, that claim must also fail. The dangerous dog statute, under which the Dangerous Dog Order was issued, supplies a post-deprivation hearing mechanism before any further action is taken against a seized dog. *See* N.Y. Agric. & Mkts. Law § 121.

Second, the Complaint is void of any facts that would support Plaintiff's assertion that he was deprived of a right to travel. Indeed, Serby has a constitutionally guaranteed right to interstate travel. *See N.Y.S. Org. of Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989). Yet, Serby's Complaint is void of any facts that state, let alone infer, an infringement of that right. There is no showing that either the Dangerous Dog Order upon which the officers acted, or the authorizing dangerous dog statute, interfered in any way with Serby's right to interstate travel. Moreover, the Order the various officers came to enforce did not grant those officers any authority to seize Plaintiff (as it did Wingo); Serby was free to come and go as he pleased. No violation can be imputed to the County if Plaintiff chose to stay in his house with Wingo while the officers remained outside.

Finally, Plaintiff would have the Court allow him to proceed with a cause of action for a violation that never occurred; since Wingo was never seized–as is plain from Plaintiff Complaint–Serby was never deprived of Wingo's company. Accepting Plaintiff's allegations as true and drawing all inferences in his favor, the Court finds no facts to support his claim that he was ever deprived of his property right to Wingo.[9]

In sum, the Plaintiff has failed to adequately plead the first prong of the *Monell* test. In turn, the Plaintiff cannot succeed in establishing the required second prong, namely, the causal connection. Therefore, Plaintiff's § 1983 causes of action against the County are dismissed.

---

[9] As an aside, the Court notes that, "[t]he qualified property rights in dogs are subject to drastic regulation." *LaBorie v. Habes*, 52 Misc.2d 768, 770 (N.Y. 1967) (further citations omitted).

### 2. § 1983 Claims Against Sabella and Lutz

The County argues that its employees, Sergeant Sabella and P.O. Lutz, are entitled to qualified immunity against Plaintiff's § 1983 claims. "The qualified immunity doctrine shields governmental officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Poe v. Leonard*, 282 F.3d 123, 131 (2d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002).

Courts perform a two-part inquiry to determine whether an official is entitled to qualified immunity. *Loria*, 306 F.3d at 1281. First, a court questions whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). By first answering this question, " a clear standard against which officers can measure the legality of future conduct" is provided. *Id.* (further citations omitted).

> If [a court] determine[s] that the officer's conduct did not violate a constitutional right, [it] proceed[s] no further and hold[s] that the officer is entitled to qualified immunity. However, if [a court] decide[s] otherwise, [it] proceed[s] to ask whether the right was clearly established at the time it was allegedly infringed. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* (internal quotations and citations omitted).

The Court notes that when a defendant presents an immunity defense

> on a Rule 12(b)(6) motion instead of a motion for summary judgment[, the defendant] must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, *see Pani* [*v. Empire Blue Cross Blue Shield*], 152 F.3d [67,] 74 [(2d Cir. 1998)] ,but, as with all Rule 12(b)(6) motions, the motion may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992).

*McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

        (a)     *Sergeant Sabella*

According to Serby's Complaint: "*Upon information and belief*, LUTZ's actions were authorized and approved by SERGEANT FRANK SABELLA." (Complaint ¶ 45 (emphasis added).) The Court will infer this to be true. This fact is the sole basis upon which Serby seeks to hold Sabella liable.

Precedential law of this Circuit requires that a plaintiff must affirmatively connect a supervisor's conduct to his subordinate's violative act or omission. *See Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) (citing *Camilo-Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir. 1998)). "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Id.* at 140 (citing *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999)). The Second Circuit instructs that

> a supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury.

*Id.* (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001)) (footnote omitted).

Taken in the light most favorable to Serby, though, the facts alleged as to Sebella fail to establish a cause of action for supervisor liability. To begin, no constitution violations are shown from the facts alleged by Serby in his Complaint. (*See supra* Part B(1)(b).) However, assuming, *arguendo*, that a constitutional violation has been established, given that the Animal Control Officers requested police backup based on a court-endorsed Order, it was objectionably reasonable for Sergeant Sabella to authorize and approve P.O. Lutz's accompanying those Officers on their attempt to execute the Order. The Order provided probable cause for Sergeant Sabella's actions. Thus, Sabella is entitled to qualified immunity from Plaintiff's suit. The County Defendants' motion to dismiss as to Sabella is, therefore, granted.

(b.) *P.O. Lutz*

For similar reasons the Court concludes that P.O. Lutz is entitled to qualified immunity in this case. Upon a reading of Serby's Complaint, in his favor (*i.e.*, assuming all facts he alleged to be true and drawing all inferences in his favor), no violation of a constitutional right has been alleged. (*See supra* Part B(1)(b).) Circuit precedent instructs that a court's inquiry stops here. *See Loria*, 306 F.3d at 1281. Yet, even assuming a constitutional violation had been stated, in this case, since there was a court-issued Dangerous Dog Order providing probable cause for the attempted seizure of Wingo, it would not be clear to P.O. Lutz that his conduct in assisting the Town's Animal Control Officers in that seizure was unlawful. *See id.* Thus, P.O. Lutz is also entitled to qualified immunity in this instance and such immunity is granted.

C. *Plaintiff's State Law Claims*

Serby also asserts causes of action grounded in state common law, to wit, trespass (*see* Complaint, Second Cause of Action), intentional infliction of emotional distress (*see id.*, Third Cause of Action), and false imprisonment (*see id.*, Fourth Cause of Action). Based upon Serby's Complaint, these claims cannot survive the County Defendants' motion to dismiss.

1. Trespass

"Under New York law, 'trespass is the interference with a person's right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner.'" *New York v. Operation Rescue Nat'l*, 273 F.3d 184, 201 (2d Cir. 2001) (quoting *Terry*, 886 F.2d at 1361). Moreover, "[l]iability for civil trespass requires the fact-finder to consider whether the person, without justification or permission, either intentionally entered upon another's property, or, if entry was permitted, that the person refused 'to leave after permission to remain ha[d] been withdrawn.'" *Long Island Gynecological Servs. v. Murphy*, 748 N.Y.S.2d 776, 777 (2002) (quoting *Rager v. McCloskey*, 305 N.Y. 75, 79, 111 N.E.2d 214 (1953)).

Serby's Complaint does not state a claim for trespass. At all times, Serby remained in possession of his real property; his Complaint does not state otherwise. Yet, even if the presence of the Animal Control Officers and P.O. Lutz did interference with Serby's right to possession, the presence of those officers was justified. The officers' were there to perform a lawful act, as authorized by the Dangerous Dog Order; the facts alleged do not show that those officers did so in an unlawful manner. Thus, the County Defendant's motion to dismiss is granted as to Plaintiff's Second Cause of Action.

2. Intentional Infliction of Emotional Distress

In order to succeed on a claim of intentional infliction of emotional distress, Plaintiff must have been the victim of "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Wyllie v. Dist. Att'y of County of Kings*, 770 N.Y.S.2d 110 (2d Dep't 2003). Thus,

> [u]nder New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.

*Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993)).

Plaintiff's causes of action for intentional infliction of emotional distress stems from the alleged attempt to take his dog, Wingo, and the refusal of the various officers to leave Plaintiff's property when directed to do so. Drawing all inferences in favor of Plaintiff, there is no such cause of action pled. The only fact pled that could possibly be construed as approaching "extreme" would be P.O. Lutz's placing his hand on his sidearm, causing Plaintiff fear. However, given the officers were acting under a court-issued Dangerous Dog Order[10] and Serby was not complying with that Order, Lutz's conduct does not rise to the level of "outrageous." Nor does Serby alleging that Lutz's action made him "fearful" equate to severe emotional distress. In short, reading Plaintiff's Complaint to his favor, as a matter of law, there is a complete absence of extreme and outrageous conduct which so transcends the bounds of decency

---

[10] It is reasonable to assume that a dog subject to a dangerous dog order could, in fact, be dangerous, and that those executing such an order should proceed with caution.

as to be regarded as atrocious and intolerable in a civilized society. Because Serby does not state a cause of action for intentional infliction of emotional distress, this claim is dismissed as to County Defendants.

3. False Imprisonment

To establish the common-law action of false imprisonment under New York law, one must establish four elements: "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 373 N.Y.S.2d 87, 93 (1975)) (brackets in *Singer*).

The Plaintiff's false imprisonment cause of action must fail; there are no facts pled regarding the any County Defendants' intent to confine Plaintiff. Rather, a reading of the Complaint in Plaintiff's favor highlights that Serby chose to remain in his house. Similarly, the Complaint is silent as to Plaintiff's supposed consciousness of the alleged confinement. Thus, Plaintiff's Complaint fails to state a claim of false imprisonment. Therefore, as to Serby's Fourth Cause of Action, the County Defendant's motion to dismiss is granted.

## CONCLUSION

For the foregoing reasons, County Defendants' Motion to Dismiss is GRANTED.

**SO ORDERED**

Dated: Central Islip, New York　　　　　　　　　／s／
　　　　September 26, 2006　　　　　　　　　Denis R. Hurley,
　　　　　　　　　　　　　　　　　　　　　　Senior United States District Judge