UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
VICTOR M. SERBY,

                                    Plaintiff,          **MEMORANDUM & ORDER**
                    - against -                         On Motions for Summary Judgment
                                                        04 Civ. 901 (DRH) (MLO)


THE TOWN OF HEMPSTEAD,
THE INCORPORATED VILLAGE OF HEWLETT NECK,
THE COUNTY OF NASSAU,
THE POLICE DEPARTMENT OF NASSAU COUNTY,
DENISE AYRE, DENISE WILLIX,
SERGEANT FRANK SABELLA,
P.O. JOHN LUTZ, ANIMAL CONTROL
OFFICER GARY SHAW, ANIMAL CONTROL
OFFICER KOMINSKI (a/k/a BART COMINSKY),
JACK OLSON, JOHN DOE, and
MARIO BOVE,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**APPEARANCES:**

For the Plaintiff:
**LAW OFFICES of JONATHAN SPENCER HORN**
125-10 Queens Blvd., Ste. 220
Kew Gardens, NY 11415
        **By:** Jonathan S. Horn, Esq.


For Defendants: The Town of Hempstead,
                Denise Willix,
                Bart Kominski (a/k/a Bart Cominsky),
                Jack Olsen, and
                Mario Bove:
**BERKMAN, HENOCH, PETERSON & PEDDY, P.C.**
100 Garden City Plaza
Garden City, NY 11530
        **By:** Joseph E. Macy, Esq., Ronald P. LaBeck, Esq.

For Defendant The Incorporated Village of Hewlett Neck:
**LAW OFFICES OF JOHN P. HUMPHREYS**
One Huntington Quadrangle
P.O. Box 9028
Melville, NY 11747
 **By:** Joseph F. Pusateri, Esq.


**HURLEY, Senior District Judge:**

 The instant case arises from a municipality's attempted enforcement of N.Y. Agricultural

and Markets Law § 121, the State's so-called "dangerous dog statute" ("dangerous dog statute")

and related civil proceedings initiated by the municipality.  In short, pursuant to the dangerous

dog statute, certain municipal employees sought to temporarily seize Plaintiff's dog, "Wingo".

The dog was never taken from the Plaintiff, but, as a result of the municipality's attempt to do so,

together with its related civil proceedings, Plaintiff brought suit in this Court against the

municipality and others alleging violations of his civil rights and of common law, and demanding

punitive and treble damages.

 Plaintiff is Victor M. Serby ("Plaintiff" or "Serby") who brings the present suit against

Defendants The Town of Hempstead ("Town"); The Incorporated Village of Hewlett Neck

("Village"); The County of Nassau ("County"); The Police Department of Nassau County

("Police Department"); Denise Ayre ("Ayre"); Denise Willix ("Willix"); Sergeant Frank Sabella

("Sabella"); P.O. John Lutz ("Lutz"); Animal Control Officer Gary Shaw ("Shaw"); Animal

Control Officer Kominski ("Kominski"); Jack Olson ("Olson"); John Doe ("Doe"); and Mario

Bove ("Bove")[1] for (1) violations of his Fourth Amendment right against unlawful seizure and

---

[1]  At times, for convenience, the Court may refer to the Defendants collectively as
"Defendants".

right to travel ("First Cause of Action"); (2) trespass ("Second Cause of Action"); (3) violations

of his Fifth Amendment civil rights depriving him of his property right to his dog and intentional

infliction of emotional distress ("Third Cause of Action"); (4) false imprisonment ("Fourth Cause

of Action"); (5) malicious prosecution and abuse of process ("Fifth Cause of Action"); and (6)

mail fraud and wire fraud, violating 18 U.S.C. § 1964, resulting from the Village's tardy

execution of its animal control contract with the Town ("Sixth Cause of Action"). (*See* Pl.'s

Second Amended Compl.). In addition to punitive damages and treble damages, Serby seeks

declaratory judgment that the "dangerous dog statute" is unconstitutional ("Seventh Cause of

Action") and seeks an injunction prohibiting the Defendants from seizing Plaintiff's dog ("Eighth

Cause of Action").

Defendants Town, Willix, Shaw, Kaminski, Olson and Bove (collectively, the "Town

Defendants") move for summary judgment, claiming: (1) Bove is entitled to absolute immunity

as a government attorney prosecuting a civil matter; (2) Willix, Shaw, Kaminski and Olson have

qualified immunity from liability as they were carrying out their official duties pursuant to a valid

state statute; (3) the Town cannot be held liable under a theory of *respondeat superior* and a

municipality is not liable for its employees' actions pursuant to a valid state statute; and (4) each

of Plaintiff's causes of action are not supported by the facts of his case. (*See* Town Defs.' Mem.

of Law in Support of Summ. J. ("Town's S.J. Mem.").)

Village Defendant also moves for summary judgment. It raises four main arguments in

support of its summary judgment motion: (1)(a) the dangerous dog statute is a valid statute and

the individual defendants enforced that statute within the scope of their employment with the

Town; (1)(b) since there was probable cause for the individual defendants' actions, Plaintiff's

causes of action for trespass, malicious prosecution, and false arrest should be dismissed; (2) because there was no extreme conduct by the individual defendants, as they were lawfully performing their job duties under a valid state statute, there is no basis for Plaintiff's intentional infliction of emotional distress claim; (3) the Village's tardy execution of its animal control contract with the Town was the parties' ordinary course of business; therefore, there was no wire or mail fraud committed when the Village caused the subject contract to be executed and applied retroactively; and (4) all of Plaintiff's claims against the Village sound in *respondeat superior* and should be dismissed against the Village. (*See* Village's Mem. of Law ("Village's S.J. Mem.").)

As to Town Defendants, the submitted evidence demonstrates that the Town Defendants are entitled to judgment as a matter of law; therefore, the Court GRANTS Town Defendants' motion for summary judgment. As to Village Defendant, the submitted evidence demonstrates that the Village is also entitled to judgment as a matter of law; therefore, the Court GRANTS Village Defendant's motion for summary judgment.

The Court will first address the Town Defendants' motion for summary judgment and then the Village Defendants' motion for summary judgment.

## I. TOWN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. BACKGROUND

The following summary of the facts is based upon Town Defendants' Local Rule 56.1 Statements, Plaintiff's Local Rule 56.1 Counterstatement and affidavits in opposition, and the submitted evidence. The recited facts, *infra*, are undisputed unless otherwise noted.

Plaintiff Serby lives in the Village of Hewlett Neck, in Nassau County, with his dog, Wingo.  In late January 2003, Defendant Denise Ayre[2] called the Village of Hewlett Neck Clerk to make a complaint about Plaintiff's dog.  On February 7, 2003, Town Animal Control Officer Willix was dispatched to Ayre's house to follow up on the complaint.  As a result, pursuant to N.Y. Agriculture and Markets law § 121, Ayre signed a "Dangerous Dog Complaint" ("dog complaint") against Wingo.  Serby contends that Ayre was "egged on" to fill out the dog complaint; she would not have done so if she had not been pressured by Willix.

Serby also disputes the Town's authority to investigate the dog complaint asserting that, at the time of Ayre's dog complaint, no dog seizure contract existed between the Village and the Town.  Serby also takes issue with the characterization of his dog, Wingo, as dangerous.

Willix filed the dog complaint with the Nassau County district court.  Finding probable cause, the judge set a hearing in early March 2003 and issued an order directing (a) the immediate seizure of Wingo and (b) that Wingo be held pending the March 2003 hearing.  Plaintiff disputes that there was probable cause to issue the order.  He further asserts that the order is facially defective, but does not elaborate his reasons for this contention.

In compliance with the order, at approximately 10:00 a.m. on March 3, 2003, Town Animal Control Officers Olson and Kaminski, together with Nassau County P.O. Lutz, went to Serby's house to seize Wingo.  It is Town policy to have a police officer accompany animal control officers when they attempt to seize an animal.  Plaintiff refused to comply with the

---

[2]  Defendant Ayre did not made an appearance in this action.  Thus, Plaintiff moved for default judgment against Ayre; hearing no response from Ayre, the Clerk of Court noted Ayre's default on September 21, 2004.  Default judgment against Ayre was subsequently granted on September 24, 2004.

court's order, keeping Wingo with him in the house. Seeking backup, the Animal Control Officers contacted their supervisor, Defendant Gary Shaw, and P.O. Lutz contacted Sergeant Frank Sabella, his supervisor. When both supervisors arrived at Plaintiff's home, another attempt was made to seize Wingo. Like the first, the second attempt was unsuccessful. The Town Defendants state that this entire exchange lasted approximately 40 minutes, after which they left Plaintiff's property. Plaintiff disputes the Town Defendants' time estimation, countering that he was not able to leave his house until around 2:30 p.m. Serby also counters that he was denied the use and enjoyment of his dog because P.O. Lutz threatened to arrest him and to seize Wingo if either left the house.

Thereafter, Plaintiff filed an Order to Show Cause with the Nassau County district court seeking to vacate the Dangerous Dog Order and to declare the dangerous dog statute unconstitutional. The judge signed the Order to Show Cause, stayed the enforcement of the Dangerous Dog Order, and set a March 5, 2003 hearing date.

The Town was originally represented by Deputy Town Attorney Mario Bove, now a defendant in this action, who represented Defendant Willix at her deposition held in that action. Plaintiff contends that Bove's prosecution of the action was malicious. Eventually, the Town retained outside counsel to prosecute the dangerous dog action against Serby. Ultimately, though, because dog complainant Defendant Ayre declined to appear to testify in the Town's case (despite being subpoenaed to do so), the Complaint was withdrawn. Thus, no rulings were made on Serby's motions filed in that action.

Based on the attempted seizure of Wingo and the related prosecution of the dog complaint against Serby, Plaintiff brought his claims of constitutional violations and of state common law violations to this Court.

B.    SUMMARY JUDGMENT STANDARD

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying those materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has offered some evidence that no genuine issue of material fact remains to be tried, the burden shifts to the non-moving party to provide similar evidence indicating that a genuine, triable issue remains. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56(e). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support

liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55.

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). That being said, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *See Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also* Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1998). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

C.    DISCUSSION[3]

Town Defendants make four main arguments in support of their motion for summary

judgment: (1) all claims against Bove must be dismissed on the basis of absolute immunity; (2)

all claims against the Animal Control Officers must be dismissed on the basis of qualified

---

[3]  To the extent that Plaintiff argues Town Defendants lacked jurisdiction to act at the
time of the attempted seizure of his dog (and thereafter) because there was no dog-seizure
contract in place between the Town and Village, the Court finds such argument unpersuasive.
(*See* Pl.'s Opp'n Mem. at 8.)  First, the Town included the subject contract with its submissions
to the Court; it is undisputed the contract was signed after March 2003, when the attempted
seizure occurred.  (*See* Sept. 2, 2003 Agreement, Exh. A, attached to Town's Rule 56.1
Statement (stating term of contract "from January 1, 2003 through December 31, 2005".)  Yet,
examining the contract, it is also clear that the contract was intended to be applied retroactively
and, in fact, was so applied.  Second, by their actions, the Village and Town acquiesced to the
retroactive application of the contract.  Furthermore, there is evidence of previous dog-seizure
contracts between the Village and Town that illustrates the parties' practice of executing such
contracts post-expiration, but for retroactive application.  (*See* Exh. T, attached to Village's Rule
56.1 Statement (Jan. 14, 1997 contract "commencing January 1, 1997 through December 1999");
Exh. U, attached to Village's Rule 56.1 Statement (Feb. 29, 2000 contract applicable "from
January 1, 2000 through December 31, 2002"); *see also* Shaw Depo. at 34:2-9, Exh. P, attached
to Village's Rule 56.1 Statement.)

Though not squarely on point, the Second Circuit recently dealt with a case that the Court
finds provides relevant guidance here.  In *New Windsor Volunteer Ambulance Corp. v. Meyers*,
an ambulance corp continued to provide ambulatory services to a town without the benefit of
contract, with both entities operating under the same terms and conditions of previously renewed,
but since expired, contracts.  *See* 442 F.3d 101 (2d Cir. 2006).  To determine disputed ownership
rights in ambulance trucks, the court relied upon terms and conditions of those expired contracts
since the parties continued to operate as if the prior written contracts were still in effect.  Among
others, the Circuit cited to *Brooklyn Life Ins. Co. of N.Y. v. Dutcher*, 95 U.S. 269, 273 (1877), for
the proposition that "There is no surer way to find out what parties meant, than to see what they
have done."  *See id.* at 112.  The same can be said here.  The Town and Village continued to
operate as if their dog-seizure contract was in effect, and had done so on prior occasions, as well.
(*See, e.g.*, Shaw Depo. 34-36, Exh. P, attached to Village's Rule 56.1 Statement.)

Thus, having examined the evidence in the record, and having considered the guidance
offered by *New Windsor Volunteer Ambulance Corp.*, the Court is convinced that no reasonable
fact-finder could find other than the 2003-2005 dog-seizure contract, though executed after the
expiration of the prior contract, applied retroactively.  Therefore, as a matter of law, at the time
of the attempted seizure of Wingo in March 2003, the named Town Defendants had the requisite
jurisdiction to act in their official capacities.

immunity; (3) the Town cannot be held liable for the conduct of its employees; and (4) Serby's claims are not supported by the facts of the case. The Court will address each argument in turn.

1. *Absolute Immunity for Bove?*

In his Fifth Cause of Action, Serby raises a malicious prosecution claim. Within that claim, he alleges that Defendant Bove, the Town's deputy attorney, "abused process and improperly used civil procedure by obstructing the deposition of DENISE WILLIX to increase Plaintiff's costs of getting her truthful testimony." (Pl.'s Second Amend. Compl. ¶ 99 (emphasis in original).) The Town Defendants counter that Bove, as a government attorney initiating a civil proceeding under N.Y. Agric. & Mkts. Law § 121, is entitled to absolute immunity. (*See* Town's Summ. J. Mem. at 3.)

"Absolute immunity is reserved for officials who perform 'special functions' and deserve absolute protection from damages liability." *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004); *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005). This Circuit has held that one such group of officials are prosecutors. *See id.* When a party claims entitlement to absolute immunity, though, courts focus on "the nature of the function performed, not the identity of the actor who performed it." *Id.* at 503 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). This is referred to as the "functional approach." *Id.*; *see also, e.g.*, *Butz v. Economou*, 438 U.S. 478, 514 (1978) (holding that persons presiding at agency hearings, performing adjudicatory functions within agency, are entitled to absolute immunity from damages liability for their judicial acts). Thus, "where a prosecutor is sued under § 1983 for unconstitutional abuse of his discretion to initiate prosecutions, a court will begin by considering

whether relevant statutes authorize prosecution for the charged conduct." *Id.* at 504 (2d Cir.

2004). In other words, "[a] defendant engaged in advocative functions will be denied absolute

immunity only if he acts 'without any colorable claim of authority.'" *Id.* (quoting *Schloss v.

Bouse*, 876 F.2d 287, 291 (2d Cir. 1989) (further citation omitted)).

The Court agrees with the Town Defendants that all Plaintiff's claims against Bove

"involve actions taken by him as a government official, in enforcing a valid state statute for the

seizure of a dangerous dog." (Town's S.J. Mem. at 4.) First, the dangerous dog statute

authorizes the commencement of a civil proceeding, such as the dog complaint proceeding

brought against Serby. *See* N.Y Agric. & Mkts. Law § 121. Second, the record before the Court

supports a finding that the nature of the functions Bove performed, including representing

Defendant Willix at her deposition (despite the allegedly annoying manner in which he did so),

were prosecutorial. *See, e.g., Buckely*, 509 U.S. at 273 ("acts undertaken by a prosecutor in

preparing for the initiation of judicial proceedings or for trial, and which occur in the course of

his role as an advocate [], are entitled to the protections of absolute immunity"). Given the

record here, no reasonable fact-finder could find otherwise. Therefore, as a matter of law, Bove

is entitled to absolute immunity from all claims brought against him in this suit. *See Bernard*,

356 F.3d at 503 ("once a court determines that challenged conduct involves a function covered

by absolute immunity, the actor is shielded from liability for damages regardless of the

wrongfulness or his motive or the degree of injury caused") (further citation omitted). As such,

the Town Defendants' request for summary judgment on this basis is granted.

## 2.      *Qualified Immunity for the Animal Control Officers?*

"The qualified immunity doctrine shields governmental officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Poe v. Leonard*, 282 F.3d 123, 131 (2d Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002).

Courts perform a two-part inquiry to determine whether an official is entitled to qualified immunity.  *Loria*, 306 F.3d at 1281.  First, a court questions whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right.'"  *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  By first answering this question, " a clear standard against which officers can measure the legality of future conduct" is provided.  *Id.* (further citations omitted).

> If [a court] determine[s] that the officer's conduct did not violate a constitutional right, [it] proceed[s] no further and hold[s] that the officer is entitled to qualified immunity.  However, if [a court] decide[s] otherwise, [it] proceed[s] to ask whether the right was clearly established at the time it was allegedly infringed.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* (internal quotations and citations omitted); *see also Demoret v. Zegarelli*, 451 F.3d 140, 148 (2d Cir. 2006) (same).

### (a)      Animal Control Officer Willix

Plaintiff argues that Willix is not entitled to qualified immunity because she knew that Wingo was not a dangerous dog, but made perjured statements to that effect (*i.e.*, Wingo was

dangerous) in securing the Dangerous Dog Order that authorized the seizing of Wingo. (*See* Pl.'s

Opp'n Mem. at 9.) To support his position, Serby quotes from *Malley v. Briggs*, 475 U.S. 335

(1986):

> The analogous question in this case is whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. . . . We find it reasonable to require the office applying for the warrant to minimize this danger by exercising reasonable professional judgment.

*Id.* at 346 (footnotes omitted). This Court is in no position to question the ruling of the Supreme

Court. Yet, the *Malley* Court also instructed: "Only where the warrant application is so lacking

in indicia of probable cause as to render official belief in its existence unreasonable, will the

shield of immunity be lost." *Id.* at 345. In *Malley*, the Supreme Court ultimately upheld the

lower court's ruling that the police officer who applied for the warrant that resulted in an

unconstitutional arrest was entitled to qualified immunity.

Plaintiff would have this Court believe that the dog complaint submitted by Willix to the

court for a Dangerous Dog Order was so lacking in indicia of probable cause that Willix should

not be shielded from liability here. Serby argues Willix knew that Defendant Ayre's "complaint

was for a leash law violation" (*see* Pl.'s Opp'n Mem. at 9.) and that Wingo was not a dangerous

dog. In support thereof, Plaintiff relies on the Declaration of Vincent Grande, III, Plaintiff's

attorney in the state proceeding that arose from the dog complaint. (*See* Grande Decl., attached

to Pl.'s Counterstatement.) In his Declaration, Grande states, *inter alia*, that Defendant Ayre told

him that Wingo never attacked her (*id.* at¶ 6) and that it was Willix who "egged [Ayre] on to fill

out and sign the paperwork that WILLIX presented her consisting of a 'Dangerous Dog Complaint', by saying '[i]f you don't sign, Animal Control cannot help you'"(*id.* at¶ 6.).

Serby faces a major problem supporting this argument because the evidence he relies upon to make the argument–*i.e.*, Grande's Declaration–is hearsay evidence. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). The Court cannot consider such evidence on a motion for summary judgment. *See H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (instructing that hearsay assertion that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit); *see also Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) ("Rule 56 provides that an affidavit submitted in opposition to summary judgment 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" (quoting Fed. R. Civ. P. 56(e)).

Even if the Court were to consider Defendant Ayre's alleged statement that Wingo did not "attack" her, that statement would not support Serby's position. In a 1967 case, a New York Justice Court rendered a ruling that required it to interpret § 116 of N.Y. Agriculture and Markets Law, a precursor to current § 121. *See People ex rel. LaBorie v. Habes*, 52 Misc.2d 768 (N.Y. 1967). There, the issue before the court was "whether a dog that threatens a human but does not bite is a dangerous dog." *Id.* at 769. The court noted that the word "attack" was the operative word of the statute as it was the basis for triggering a determination proceeding. *See id.* ("the words 'attack upon a person' are intended as the standard to be used in determining whether or

-14-

not a dog is 'dangerous.'"). Yet, "attack" was not defined by any statute or, at that point, any case. *Id.* Thus, the court set out to first provide that necessary definition. Relying on various dictionaries and cases, the court determined:

> that "attack", as the standard of determining whether or not a dog is dangerous, was intended to mean such overt actions by a dog as might cause a reasonable apprehension of harm or injury to a person, together with apparent ability in the dog to inflict such harm. Actual biting is unnecessary to an "attack."

*Id.* (further citations omitted).

On the record, there is sufficient, undisputed evidence showing Defendant Willix had probable cause to believe that Wingo fit within the parameters of § 121's meaning of a dangerous dog. (*See, e.g.*, Willix Depo. at 27, 30-31, Exh. B, attached to Town's Notice of Mot. Summ. J.; Dog Complaint, Exh. I, attached to Village's Rule 56.1 Statement.) Thus, assuming, *arguendo*, a constitutional violation attributable to Defendant Willix, given the New York Justice Court decision regarding § 121, Defendant Willix had probable cause to file Defendant Ayre's dog complaint with the court. In other words, the dog complaint submitted in support of the subject Dangerous Dog Order was not so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *See Malley*, 475 U.S. at 345. Therefore, as a matter of law, Defendant Willix is entitled to qualified immunity in this case.

(b)     Animal Control Officer Shaw

Serby makes two arguments regarding Shaw: (1) Shaw acted on an order that was facially defective; and (2) Shaw violated Serby's constitutional right to be secure in his home. As to Plaintiff's first argument: First, other than his bald statement, Plaintiff fails to point out any facial

deficiencies of the Dangerous Dog Order.  (*See* "Order To Seize Dog", Exh. J, attached to Village's Rule 56.1 Statement.)  Second, upon examination of said dog order, the Court finds no facial defect that would alert any of the Animal Control Officers that their attempted execution of the same would be a violation of Serby's constitutional rights.  Therefore, as a matter of law, Plaintiff's "facial defect" argument must fail.

The Court finds Plaintiff's argument regarding the violation of his constitutional right to be secure in his home equally unpersuasive and rejects his characterization of the Animal Control Officers' attempt to execute the Dangerous Dog Order as an unlawful search and seizure.  It is not enough that Shaw was on Plaintiff's property or opened the outer door to knock on the inner door to Plaintiff's house.  "[T]he Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967).  Plaintiff cannot claim a reasonable expectation of privacy on the walkway or driveway that leads to his door or the unlocked screen door before the inner door to his house.  That area is "as open to the [] officers as to any delivery person, guest, or other member of the public." *United States v. Titemore*, 437 F.3d 251, 260 n.3 (2d Cir. 2006) (citing, among others, *United States v. Taylor*, 90 F.3d 903, 908-09 (4th Cir. 1996)) (instructing that common law property distinctions, such as curtilage, are no longer controlling in Fourth Amendment violation determinations; rather, it is 'a reasonable expectation of privacy' that controls the analysis).  Given that Shaw was present at Plaintiff's property to execute a court order issued pursuant to a state statute, such presence did not translate into a violation of Plaintiff's Fourth Amendment rights.[4]

---

[4]  To the extent Serby's Fourth Amendment claim should be construed as one under the Fourteenth Amendment, for a due process violation, that claim must also fail.  The dangerous dog statute, under which the Dangerous Dog Order was issued, supplies a post-deprivation

Moreover, to the extent that a portion of Shaw's body crossed the threshold of Serby's inner door to hand Serby papers, such action does not amount to a violation of Serby's constitutional right to be secure in his home.  At his October 2, 2003, deposition, Serby testified:

> Q:     Did any officer walk into your house across the threshold?
> A;     To the extent, you know, in a layman's terms, the officer
>        did not go beyond the inner door and walk into the house.
>        The officer did open the outside door and they were
>        banging on the inner door.
> Q:     *Did any part of the officer's body cross the threshold or the*
>        *door frame of the inside door*?
> A:     The door frame of the outer door, yes.  *The door frame of the inside door,*
>        *probably not except maybe to assist in handing me the papers through the*
>        *small slit in the door I left.*
> Q:     Did you ask that those papers be handed to you?
> A:     I asked them if I could get a copy of the papers, I asked
>        them to please, slide it underneath the door.  And as I recall
>        they didn't fit because the threshold, you know, goes up
>        *through the door*.
> Q:     When you say don't push the door open on me or I'll push back, did they
>        respond to you, say anything?
> A:     They said okay and they handed me the papers generally
>        through the door.

(Serby Depo. at 74:13-75:15, attached to Pl.'s Rule 56.1 Counterstatement (emphasis added).)

Drawing all factual inferences and resolving all ambiguities in Serby's favor, the Court does not agree with Serby's attempt to characterize the exchange of papers that resulted in a portion of Shaw's body crossing the threshold of Serby's house as an unauthorized entrance.  While Serby did not invite or permit Shaw to enter his house for any reason (*see* Serby Declaration at ¶5, attached to Pl.'s Rule 56.1 Counterstatement), by his own admission, Serby did permit–indeed, requested–Shaw to hand him papers through a slit in his front door.  Moreover, Serby testified

---

hearing mechanism before any further action is taken against a seized dog.  *See* N.Y. Agric. & Mkts. Law § 121.  More important, since there was never any deprivation of Wingo (since the dog was never seized), no due process need have been accorded to Serby.

that *he* controlled the extent to which his inner door was opened, *i.e.*, a small slit sufficient to allow the passing of papers, thereby controlling the extend to which a portion of Shaw's body "entered" Serby's house. The factual scenario of this case does not evince an unlawful search and seizure.

Furthermore, Serby's reliance on *Coon v. Town of Springfiled, Vt.*, 404 F.3d 683 (2d Cir. 2005), to establish a constitutional violation is misplaced. In that case, plaintiff Coon alleged a town constable violated his Fourth Amendment right to be free from unreasonable search and seizure when the constable left eviction papers in Coon's apartment when Coon was not home. *See id.* at 685. While "[t]he district court agreed that Coon's allegation, if proved, could establish a Fourth Amendment violation," it, nonetheless, granted the town's summary judgment because Coon "has not met his burden of demonstrating *facts* [that] suggest [the constable] actually made an unauthorized entry." *Id.* at 686 (emphasis in original). Noting the submission of Coon's and Coon's wife's affidavits, together with supporting documentation, the Second Circuit reversed that portion of the district court's ruling because it concluded that the plaintiff had introduced sufficient evidence of a Fourth Amendment violation to survive a motion for summary judgment. *See id.*

Here, conversely, the factual scenario is quite different. Even though Serby did not invite or permit Shaw to enter his house (*see* Serby's Declaration, attached to Pl.'s Rule 56.1 Counterstatement), he did request copies of papers and, by opening his door a slit, he did implicitly authorize Shaw to hand him those papers. Given the combination of Serby's request (together with Serby's act of opening the door), and the fact that Shaw was present to execute a court order, it was objectively reasonable for Shaw to believe that his actions in furtherance of

executing the Dangerous Dog Order were lawful.[5] *See Lennon v. Miller*, 66 F.3d 416, 422 (2d Cir. 1995) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials–like other officials who act in ways they reasonably believe to be lawful–should not be held personally liable.")).  Therefore, even if Shaw's conduct did violate Serby's Fourth Amendment right, as a matter of law, he is entitled to qualified immunity.

To the extent Serby attempts to claim any constitutional violation attributable to Shaw based on the seizure of his dog, Wingo, the Court finds none as a matter of law.  Simply stated: the evidence clearly establishes that Wingo was never seized.  However, assuming, *arguendo*, that the attempted seizure did amount to a constitutional violation, Shaw is entitled to qualified immunity against this cause of action, as well.

### (c)    The Other Named Animal Control Officers

No other Animal Control Officers are alleged to have "entered" Serby's house.  The Court has already addressed the presence of Shaw outside of Plaintiff's house, *i.e.*, the mere presence on Serby's property was not a Fourth Amendment violation.  (*See supra* Part I(C)(2)(b) at 16.)  The same reasoning holds true for Animal Control Officers Kominski and Olson.  To the extent that the presence of these Officers could be construed as a Fourth Amendment violation,

---

[5] Even assuming, as we must on a motion for summary judgment, *see Coon*, 404 F.3d at 686 (instructing that on a motion for summary judgment all factual inferences are drawn in and all ambiguities are resolved in non-movant's favors), that Shaw entered Serby's house (*see* Pl.'s Opp'n Mem. at 11; Olson Depo. at 44:10-13, Exh. H, attached to Village's Rule 56.1 Statement), it was objectively reasonable for Shaw to believe that his actions in furtherance of executing the Dangerous Dog Order were lawful.

though, since the Officers were present to execute a court order, it was objectively reasonable for them to believe they had probable cause to be on Serby's property. As such, Officers Kominski and Olson are entitled to qualified immunity. And, since Wingo was not seized, Serby does not establish a constitutional violation for deprivation of property against Kominski or Olson. Therefore, as a matter of law, Animal Control Officers Kominski and Olson, are entitled to qualified immunity on this claim, as well.

3.    *Town Liability for the Conduct of its Employees?*

Serby has sued the Town, a municipal entity, claiming a violation of 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

In order to establish liability of a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that this violation was motivated by a municipal custom or policy. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."); *Batista v. Rodriquez*, 702 F.2d 393, 397 (1983).

Serby argues: "THE TOWN OF HEMPSTEAD is liable under 42 USC [*sic*] § 1983 because they [*sic*] have a policy of seizing dogs under the Dangerous Dog Statute (established state procedure) under municipal policy." (Pl.'s Opp'n Mem. at 11 (emphasis in original).) This argument makes no sense. In any event, the Town is obligated to follow state law. In securing an order to seize a dangerous dog, the evidence in the record shows the Town follows the dictates of state law, namely, N.Y. Agric. & Mkts. Law § 121.

Furthermore, it is ultimately Plaintiff's burden of proof to establish "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista*, 702 F.2d at 397. As the Town correctly notes:

> plaintiff has not, and cannot, allege a custom or policy on the part of defendant the Town of Hempstead that results in a deprivation of his rights. Nor can any inference of such a custom or policy be made based on the incident alleged in the complaint, or any of the facts elicited in this matter.

(Town's S.J. Mem. at 10.) The Court agrees; having reviewed the submitted affidavits and exhibits in favor of non-movant Serby and drawing all factual inferences in his favor, the record before the Court is void of any evidence of a Town custom or policy that caused a denial of any of Serby's constitutional rights. *See, e.g., Gummo v. Village of Depew, N.Y.*, 75 F.3d 98, 107 (2d Cir. 1996) (reiterating the directive that, when deciding summary judgment motions, courts must review all evidence in favor of non-movants). Since the Town is moving for summary judgment against Serby, who will bear the ultimate burden of proof at trial, the Town has satisfied its burden of showing it is entitled to judgment as a matter of law by "pointing to an absence of

evidence to support an essential element" of Serby's §1983 claim against the Town, namely, establishing a policy or custom. *Id.*[6]

Finally, the Court notes that it need not address Serby's due process argument; *i.e.*, that "due process requires a pre-deprivation hearing even for a mere deprivation of property." (Pl.'s Opp'n Mem. at 12.) The record is clear that Serby was not deprived of Wingo at any time as no seizure of the dog occurred. In turn, a claim of due process violation is not ripe for adjudication. *See Dougherty v. Town of N. Hempstead Bd. of Zoning*, 282 F.3d 83, 90 (2d Cir. 2002) ("The purpose of the ripeness requirement is to ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution. The ripeness requirement prevents a federal court from entangling itself in abstract disagreements over matter that are premature for review because the injury is merely speculative and may never occur . . . ."). Here, any injury Serby claims from the seizure of Wingo is merely speculative and, since the Town's dog complaint against Serby was withdrawn, such seizure may never occur.

4.    *Plaintiff's Claims Unsupported by Facts?*

The Court notes that Plaintiff has not addressed the Town Defendants' final argument that Plaintiff's claims are unsupported by the facts of the case. The Court will deem Plaintiff's silence here as abandonment of opposition to this argument. *See generally State Street Bank &*

---

[6] The Court refuses to entertain Serby's argument that Wingo has an independent, "constitutionally protected liberty interest against 'being dealt with as provided in Section 121 of the Agricultural and Markets Law.'" (Pl.'s Opp'n Mem. at 11.) First, Wingo is not a named party in this action; thus, even if the dog has such a constitutionally protected liberty interest, it cannot claim a violation of that right here. Second, the Court is unaware of any authority that bestows constitutional rights upon domestic animals, and Plaintiff has not cited to any authority supporting such a contention.

*Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004) (refusing to

consider argument where party does not adequately present arguments thereon) (collecting

cases).  For thoroughness, though, the Court will summarily address the Town Defendants' final

argument.

(a)     <u>Right to Travel</u>

There is no argument that Serby has a constitutionally guaranteed right to interstate travel.

*See N.Y.S. Org. of Women v. Terry*, 886 F.2d 1339 (2d Cir. 1989).  The same is true of his right

to travel within the state.  *See King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d

Cir.), cert. denied, 404 U.S. 863 (1971).  Yet, other than his bald assertion in his First Cause of

Action (*see* Pl.'s Second Amend. Compl. at 6), there is an absence of facts in the record

showing–or even implying–that any acts of the Town Defendants caused an infringement of

Serby's right to travel.  Accepting as true Serby's contention that a police officer did threaten to

arrest him if he left his house, any resulting violation to Serby's right to travel (assuming,

*arguendo*, there was one) cannot be imputed to the Town, as the police officer was an employee

of the *County*.  Since it would ultimately be Serby's burden of proof at trial on this cause, the

Town has satisfied its burden of showing it is entitled to judgment as a matter of law by

"pointing to an absence of evidence to support an essential element" of Serby's right to travel

claim.  *Gummo*, 75 F.3d at 107.

(b)     <u>Trespass</u>

"Under New York law, 'trespass is the interference with a person's right to possession of

real property either by an unlawful act or a lawful act performed in an unlawful manner.'" *New*

*York v. Operation Rescue Nat'l*, 273 F.3d 184, 201 (2d Cir. 2001) (quoting *Terry*, 886 F.2d at

1361).  Moreover, "[l]iability for civil trespass requires the fact-finder to consider whether the person, without justification or permission, either intentionally entered upon another's property, or, if entry was permitted, that the person refused 'to leave after permission to remain ha[d] been withdrawn.'" *Long Island Gynecological Servs. v. Murphy*, 748 N.Y.S.2d 776, 777 (2002) (quoting *Rager v. McCloskey*, 305 N.Y. 75, 79 111 N.E.2d 214 (1958)).  The facts in the record before the Court do not support a cause of action for trespass.  The presence of the Town's Animal Control Officers on Serby's property was with justification; they were there to perform a lawful act, pursuant to a court order.  The evidence does not indicate otherwise and, as a matter of law, Town Defendants are entitled to summary judgment on this cause of action.

(c)  Deprivation of Property Right in Dog

The record is clear that Serby was never deprived of Wingo as the dog was never seized. Therefore the evidence will not support Serby's claim for deprivation of his property right to Wingo.  As a matter of law, then, Town Defendants are entitled to summary judgment on this cause of action.

(d)  Intentional Infliction of Emotional Distress

In order to succeed on a claim of intentional infliction of emotional distress, Plaintiff must have been the victim of "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society."  *Wyllie v. Dist. Att'y of County of Kings*, 770 N.Y.S.2d 110 (2d Dep't 2003).  Thus,

> [u]nder New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a

causal connection between the conduct and the injury; and (4) severe emotional distress.

*Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993)).

Plaintiff's causes of action for intentional infliction of emotional distress stem from the alleged taking of his dog, Wingo. Drawing all inferences in favor of Plaintiff, there is no evidence in this record that would support such cause of action. The only fact pled that could possibly be construed as approaching "extreme" would be the conduct of P.O. Lutz when he placed his hand on his sidearm, causing Plaintiff fear. Given the totality of the circumstances, though, this action is not the type of extreme and outrageous conduct which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society. Since it would be Serby's burden to prove all elements of intentional infliction of emotional distress at trial and since Town Defendants have pointed to an absence of evidence needed to support such a claim, as a matter of law, Town Defendants are entitled to summary judgment on this cause of action.

### (e)    False Imprisonment

To establish the common-law action of false imprisonment under New York law, one must establish four elements: "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 373 N.Y.S.2d 87,93 (1975)) (brackets in *Singer*).

The Plaintiff's false imprisonment cause of action must fail as he has failed to present sufficient evidence in opposition of the Town Defendants' Motion for Summary Judgment to defeat that motion. First, there is nothing in Serby's Declaration remotely pertaining to the elements of false imprisonment that Serby would be required to prove at trial. (*See* Serby's Declaration, attached to Pl.'s Rule 56.1 Counterstatement.) Second, while Serby testified at his October 2003 deposition that he was suspicious that, if he left his house, there would be an officer waiting somewhere (*see* Serby Depo. at 76:7-9, 15-18), even drawing all factual inferences in Serby's favor, such suspicion does not translate into the requisite showings for false imprisonment. As a threshold matter, even if the Court construes Serby's suspicion as a consciousness of confinement, there is no evidence that the Animal Control Officers intended to confine Serby. Finally, by not raising any counter-argument in his opposition papers, despite the Town Defendants having explicitly raising it (to argue that there is no showing in the record of false imprisonment), the Plaintiff is deemed to waive this cause of action as against the Town Defendants. As a matter of law, Town Defendants are entitled to summary judgment on this claim.

(f)     Malicious Prosecution

In order to prevail on a cause of action for malicious prosecution, a plaintiff must prove four elements. *See Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004).

> First, the plaintiff must prove that the defendant initiated a *criminal* proceeding. Second, the proceeding must have been terminated favorably to the plaintiff. Third, the plaintiff must prove that there was no probable cause for the criminal charge. Finally, the defendant must have acted maliciously.

*Id.* (further citation omitted). Here, there is no dispute that the dog complaint proceeding against Serby was a civil proceeding. Therefore, as a matter of law, there is no way for Serby to make the requisite showing for malicious prosecution. Thus, Town Defendants are entitled to summary judgment on this claim.

(g)    Mail and Wire Fraud

Citing to 18 U.S.C. § 1964–the statute entitled "Civil remedies" under R.I.C.O.–Serby asserts Town Defendants committed mail fraud and wire fraud

> by utilizing the mails and fax in furtherance of a scheme to defraud
> the plaintiff whereby The TOWN and VILLAGE conspired to
> retroactively enter into a contract for animal control services so
> that the TOWN could defend itself by claiming that it had
> jurisdiction over Plaintiff's dog where there was none at the time
> of the incident.

(Pl.'s Second Amended Compl. at ¶ 108 (Sixth Cause of Action).) This Court has already addressed private individuals bringing such causes of action under Title 18 for mail fraud and wire fraud (*i.e.*, 18 U.S.C § 1341 for mail fraud and 18 U.S.C. § 1343 for wire fraud). In *Vasile v. Dean Witter Reynolds, Inc.*, 20 F. Supp.2d 465, 478 (E.D.N.Y. 1998) stated that there is no private cause of action for mail fraud or wire fraud under Title 18. *See also Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir. 1989). Therefore, as to Serby's Sixth Cause of Action, Town Defendants are entitled to summary judgment as a matter of law.

## II.     VILLAGE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.     BACKGROUND

Having examined Defendant Village's Local Rule 56.1 Statement, Plaintiff's Local Rule 56.1 Counterstatement and affidavits in opposition, and the submitted evidence, together with the Town Defendants' Local Rule 56.1 Statement and Plaintiff's Counterstatement thereto, the Court adopts the "Background" stated above (*see* Part I(A)) with the following additions.  The Village contends that it designated the Town's Animal Control Officers to enforce the State's dangerous dog statute "by way of resolution dated April 7, 2003 given retroactive effect to January 1, 2003 to run until December 31, 2005."  (Village's Local Rule 56.1 Statement at ¶ 11).  Serby asserts that as to the March 3, 2003 incident at his house, the retroactivity had "no force or effect." (Serby's Local Rule 56.1 Counterstatement at ¶ 11.)  In any event, it was not until September 2, 2003, that the Town's board "adopted a resolution authorizing the Town to enter into and execute an agreement with [the Village]" regarding, *inter alia*, the seizing of dangerous dogs within the Village.  (*Id.*)

### B.     SUMMARY JUDGMENT STANDARD

See Part I(B) *supra* for a complete discussion of the summary judgment standard.

### C.     DISCUSSION

In his opposition memorandum, Serby asserts: "The main claims against the VILLAGE OF HEWLETT NECK remain or fall with the court's determination as to whether the contract with THE TOWN OF HEMPSTEAD for animal control services has retroactive effect with

respect to the incident involving Plaintiff SERBY." (Pl.'s Opp'n Mem. at 14 (emphasis in original).) Serby argues that there was no previous pattern of dealing, *i.e.*, the Town and Village entering into a service contract after the expiration of a prior one, with retroactive application. (*See id.* at 15.) The Court disagrees and directs the reader's attention to Part I(C)n.3, *supra*, for its reasoning. Given the evidence in record and applicable case law, there is no genuine dispute that there was a service contract between the Village and Town.[7] Therefore, it is proper to grant the Village summary judgment. To the extent that Plaintiff's First through Sixth Causes of Action remain as against the Village, for the reasons stated in Part I, *supra*, summary judgment is granted in the Village's favors as to those six Causes of Action.

## III. PLAINTIFF'S SEVENTH AND EIGHTH CAUSES OF ACTION

### A. SEVENTH CAUSE OF ACTION: CONSTITUTIONALITY OF STATE STATUTE

The supplemental jurisdiction statute provides that "district courts may decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Granting the moving Defendants' motions for summary judgment bases on 42 U.S.C. § 1883, the Court declines to exercise supplemental jurisdiction over this state law claim, *i.e.*, determining the constitutionality of New York State's

---

[7] The Court notes that it has examined Exhibits Q-U, those exhibits cited by Serby in support of his argument that there was not a valid animal control service contract between the Village and the Town at the time of the attempted seizure of Wingo. However, the Court does not find any letters from the Town to the Village that "specifically state that animal control services will be interrupted should an executed contract not be returned." (Pl.'s Opp'n Mem. at 15, citing "TOH Bates number 00016".) Thus, upon the evidence in record, it is proper to conclude, as a matter of law, that there was a valid animal control service contract between the Village and the Town at the time of the attempted seizure of Wingo.

dangerous dog statute, namely, N.Y. Agric. & Mkts. § 121. *See also, e.g., Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001) ("Where a decision is to be made on the basis of state law, however, the Supreme Court has long shown a strong preference that the controlling interpretation of the relevant statute be given by state, rather than federal courts." (further citations omitted)).

B.    EIGHTH CAUSE OF ACTION: INJUNCTIVE RELIEF

Finally, Plaintiff requests an injunction against the Town and Village from using the dangerous dog statute, under non-exigent circumstances, to seize a person's dog before a hearing is held. (*See* Pl.'s Second Amended Compl. at ¶ 108.) First, Serby's standing to request injunctive relief applies only to his dog; he lacks any standing as to any other person's dog or dogs. *See generally Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998). Further, since no seizure has occurred and since there is no evidence that a seizure is to occur in the near future, Serby's request for injunctive relief is not ripe for adjudication. *See, e.g., Dougherty*, 282 F.3d at 90. Therefore, the Court declines to rule on this cause of action.

## CONCLUSION

For the foregoing reasons, Town Defendants' Motion for Summary Judgment is GRANTED. Similarly, Village Defendant's Motion for Summary Judgment is also GRANTED.

The Magistrate Judge may proceed with an "assessment of damages" hearing against Defendant Ayre (*see* Sept. 28, 2004 Order of Magistrate Judge Orenstein (doc. #19)).

**SO ORDERED**

Dated:    Central Islip, New York                    _____/s/_____
          September 30, 2006                          Denis R. Hurley,
                                                      Senior United States District Judge